SHAWN N. ANDERSON
United States Attorney
APRIL R. OWEN
Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagåtña, Guam 96910
PHONE: (671) 472-7332
FAX: (671) 472-7215

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JASON SOLATARIO BROWN,<br><br>Defendant. | CRIMINAL CASE NO. 20-00028<br><br>**UNITED STATES' TRIAL BRIEF**<br><br>**Trial: April 5, 2021 – 10:00 a.m.**<br>**Judge: Frances Tydingco-Gatewood**<br>**Chief Judge** |

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................... 1

II.   CASE POSTURE ........................................................................................................... 1

III.  PRETRIAL MOTIONS ................................................................................................. 1

IV.   FACTS THE GOVERNMENT INTENDS TO PROVE AT TRIAL ........................... 2

V.    CHARGES AND RELATED ISSUES ........................................................................ 5

      A.  Attempted Enticement of a Minor .................................................................. 5

      B.  Attempted Transfer of Obscenity to a Minor ................................................. 6

      C.  Forfeiture ........................................................................................................ 8

VI.   ANTICIPATED EVIDENCE ..................................................................................... 10

      A.  Joshua Kipp, Special Agent, FBI ................................................................ 10

      B.  Rafael Fernandez, Special Agent, FBI ........................................................ 11

      C.  Michael Gadsden, Special Agent, FBI ........................................................ 11

      D.  Liu Jiang, Special Agent, FBI ..................................................................... 11

      E.  Carla Lease, Special Agent, FBI ................................................................. 11

      F.  Erwin Fejeran, Special Agent, HSI ............................................................. 11

      G.  RJ Fejeran, Special Agent, HSI .................................................................. 11

      H.  Andres Martinez-Munoz, Agent, AFOSI .................................................... 11

      I.  Dallas Drexler, Agent, AFOSI ..................................................................... 11

      J.  Elsiana Cruz, ITE .......................................................................................... 12

VII.  EVIDENTIARY AND OTHER TRIAL ISSUES ..................................................... 12

      A. Attempt ........................................................................................................... 12

      B. Intent .............................................................................................................. 12

      C. Interstate Commerce ...................................................................................... 12

D. Statements ................................................................................................. 13

E. Photographs ............................................................................................... 13

F. Duplicates .................................................................................................. 14

G. Chain of Custody ....................................................................................... 14

H. Expert Witness .......................................................................................... 15

I. Prima Facie Threshold for Authentication ............................................... 16

J. Foundation for Still Photographs/Video Recordings ................................ 17

K. Expert Witness Opinion ............................................................................ 18

L. Statements of Non-Testifying Agents ....................................................... 20

M Witness Impeachment by Prior Bad Acts ................................................ 20

N. Unrelated Instances of Non-Criminal Conduct ........................................ 21

O. Sexual Images ........................................................................................... 21

P. Explanation of Investigation ..................................................................... 22

Q. Inextricably Intertwined Evidence ........................................................... 22

R. Stipulations ............................................................................................... 22

VIII.   CONCLUSION ................................................................................................ 23

# **TABLE OF AUTHORITIES**

**Cases**

*Apprendi v. New Jersey,* 120 S. Ct. 2348 (2000) .................................................................. 8, 9

*Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 504-07 (1985) ................................ 7

*Cox v. United States*, 447 U.S. 908 (1980) ................................................................. 13

*Daubert v. Merrell Dow Pharm, Inc.,* 509 U.S. 579 (1993)................................ 16, 19

*Gallego v. United States,* 276 F.2d 914, 917 (9th Cir. 1960) ...................................... 15

*Hamling v. United States,* 418 U.S. 87, 104-05 (1974) .......................................... 7, 8

*In re Paoli Railroad Yard PCB Litigation,* 35 F.3d 717, 742 n.8 (3rd Cir. 1994)...................... 20

*In re TMI Litig.,* 193 F.3d 613, 664 (3rd Cir. 1999) .................................................. 19

*Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141 (1999)................................ 19

*Libretti v. United States,* 516 U.S. 29 (1995)........................................................... 8, 9

*Miller v. California,* 413 U.S. 15, 24 (1973) ........................................................... 7, 8

*Mishkin v. New York,* 383 U.S. 502, 508-09 (1966) .................................................. 7

*People of the Territory of Guam v. Ojeda*, 758 F.2d 403 (9th Cir. 1985) ....................... 13

*Phiropoulos v. Bi-State Development Agency,* 908 S.W.2d 712, 714 (Mo.App.E.D. 1995)........ 18

*Pinkus v. United States,* 436 U.S. 293, 300-01 (1978) ............................................... 8

*Pope v. Illinois,* 481 U.S. 497, 500-01 (1987) ......................................................... 7

*Rogers v. Ingersoll-Rand Co.,* 971 F.Supp. 4 (D.D.C. 1997) ................................... 18

*Roth v. United States,* 354 U.S. 476, 487 n.20 (1957) ............................................... 7

*Simms v. Dixon,* 291 A.2d 184, 186 (D.C. App. 1972).............................................. 18

*Smith v. United States,* 431 U.S. 291, 302 (1977) ..................................................... 7

*State v. Powers,* 148 S.W. 3d 830, 832 (Mo.App.E.D. 1995) ................................... 18

*Sutherland v. Koster,* 2011 WL 2784108 (E.D.Mo. 2011) ....................................... 18

UNITED STATES' TRIAL BRIEF -iii

*United States v. Bailey,* 228 F.3d 637, 639 (6th Cir. 2000) ........................................ 12

*United States v. Barela*, 973 F.2d 852, 855 (10th Cir. 1992) ..................................... 22

*United States v. Barry,* 814 F.2d 1400, 1403 (9th Cir. 1987) ..................................... 21

*United States v. Beckman,* 298 F.3d 788, 793-94 (9th Cir. 2002) ............................. 22

*United States v. Black*, 767 F.2d 1334, 1342 (9th Cir. 1985) .................................... 16

*United States v. Brannon*, 616 F.2d 413, 416 (9th Cir. 1980) ................................... 13

*United States v. Chang An-Lo*, 851 F.2d 547, 557 (2d Cir. 1988).............................. 14

*United States v. Clark,* 986 F.2d 65, 68 (4th Cir. 1993) ............................................ 18

*United States v. Collins,* 90 F.3d 1420, 1428 (9th Cir. 1996)..................................... 22

*United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004)...................................... 22

*United States v. Dare,* 425 F.3d 634 (9th Cir. 2005) .................................................... 9

*United States v. Davis,* 183 F.3d 321, 357 n.12 (3rd Cir. 1999)................................. 21

*United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988) ................................ 13

*United States v. Garmany*, 762 F.2d 929, 938 (11th Cir. 1985) ............................... 14

*United States v. Georgalis*, 631 F.2d 1199, 1205 (5th Cir. 1980) ............................. 14

*United States v. Geston,* 299 F.3d 1130, 1137 (9th Cir. 2002)................................... 21

*United States v. Gil*, 58 F.3d 1414, 1422 (9th Cir. 1995) .......................................... 20

*United States v. Grimm,* 568 F.2d 1136, 1138 (5th Cir. 1978).................................. 21

*United States v. Hankey,* 203 F.3d 1160 (9th Cir. 2000) ........................................... 16

*United States v. Harrington*, 923 F.2d 1371 (9th Cir. 1991).............................. 14, 15

*United States v. Hedgcorth*, 873 F.2d 1307, 1313 (9th Cir. 1989) ........................... 21

*United States v. Holder*, 302 F. Supp. 296, 298 (D. Mont. 1969),

aff'd and adopted, 427 F.2d 715  (9th Cir. 1970)....................................................... 13

*United States v. Houston*, 547 F.2d 104, 107 (9th Cir. 1976).................................... 23

UNITED STATES' TRIAL BRIEF -iv

*United States v. Hughes*, 632 F.3d 956, 961 (6th Cir. 2011) ........................................ 12

*United States v. Lowe*, 767 F.2d 1052, 1063-64 (4th Cir. 1985) ................................... 22

*United States v. Martin*, 897 F.2d 1368, 1371-72 (6th Cir. 1990)................................ 22

*United States v. Myers*, 21 F.3d 826 (8th Cir. 1994) ...................................................... 9

*United States v. Nader*, 542 F.3d 713, 717 (9th Cir. 2008) ......................................... 13

*United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000)........................................ 13

*United States v. Pelullo*, 14 F.3d 881 (3rd Cir. 1994) ................................................... 8

*United States v. Qaoud*, 777 F.2d 1105, 1111 (6th Cir. 1985) .................................... 21

*United States v. Roach*, 28 F.3d 729, 733 (8th Cir. 1994)........................................... 18

*United States v. Russell*, 703 F.2d 1243, 1249 (11th Cir. 1983)................................. 21

*United States v. Smith*, 966 F.2d 1045 (6th Cir. 1992) .................................................. 9

*United States v. Solorio*, 669 F.3d 943 (9th Cir. 2012) ................................. 14, 15, 20

*United States v. Standish*, 3 F.3d 1207, 1210 (8th Cir. 1993) ..................................... 18

*United States v. Stewart*, 420 F.3d 1007, 1021 n.13 (9th Cir. 2005)........................... 14

*United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) ...................................... 12

*United States v. Tenerelli*, 614 F.3d 764, 772 (8th Cir. 2010)..................................... 22

*United States v. Voigt*, 89 F.3d 1050 (3rd Cir. 1996) .................................................... 9

**<u>Statutes</u>**

9 G.C.A. § 25.10 ................................................................................................................ 5

9 G.C.A. § 25.15 ................................................................................................................ 5

18 U.S.C. § 1467 ............................................................................................................... 8

18 U.S.C. § 1470................................................................................................... 1, 5, 6

18 U.S.C. § 2422(b) ................................................................................................. 1, 5

18 U.S.C. § 2428............................................................................................................... 8

**Rules**

Fed. R. Crim. P. 32.2 ................................................................................... 8, 9

Fed. R. Evid. 104 ........................................................................................ 19

Fed. R. Evid. 403 ........................................................................................ 21

Fed. R. Evid. 404 ........................................................................................ 22

Fed. R. Evid. 608 .................................................................................... 20, 21

Fed. R. Evid. 702 .................................................................................... 15, 18

Fed. R. Evid. 703 ........................................................................................ 19

Fed. R. Evid. 801 ........................................................................................ 13

Fed. R. Evid. 803 ........................................................................................ 20

Fed. R. Evid. 901 ............................................................................. 13, 14, 16

Fed. R. Evid. 902 ........................................................................ 2, 10, 16, 17

Fed. R. Evid. 1001 ...................................................................................... 17

Fed. R. Evid. 1003 ...................................................................................... 14

**Other Authorities**

Ninth Circuit Manual of Model Criminal Jury Instruction No. 5.3 ............................................. 12

Ninth Circuit Manual of Model Criminal Jury Instruction No. 4.14 ........................................... 18

Federal Criminal Jury Instruction 7th Circuit 1470[1] (2012 ed.)................................................ 6

Sixth Circuit Pattern Criminal Jury Instruction 16.09 (2017 ed.)1 ................................................ 6

# I. **INTRODUCTION**

The United States submits this brief in compliance with the Court's Amended Scheduling Order entered on January 26, 2021. *See* ECF 16. This case is set for jury trial on April 5, 2021. The Government's trial brief sets forth a summary of the basic facts the Government intends to prove at trial and addresses legal and evidentiary issues the Government anticipates arising at trial.

# II. **CASE POSTURE**

On November 20, 2020, JASON SOLATARIO BROWN ("Defendant") was arrested and a Complaint was filed, charging the Defendant with the offenses of Attempted Enticement of a Minor, in violation of 18 U.S.C. § § 2422(b) and 2, and Attempted Transfer of Obscenity to a Minor, in violation of 18 U.S.C. § § 1470 and 2. Subsequently, on December 2, 2020, the grand jury returned a True Bill charging Defendant with the offenses of Attempted Enticement of a Minor, in violation of 18 U.S.C. § § 2422(b) and 2, and Attempted Transfer of Obscenity to a Minor, in violation of 18 U.S.C. § § 1470 and 2. The Indictment contains a Notice of Forfeiture. *See* ECF 10.

# III. **PRETRIAL MOTIONS**

Defendant filed an unopposed motion to continue the trial and related filing dates on January 7, 2021 to allow more time to prepare a defense and provide effective assistance of counsel. *See* ECF 15. On January 26, 2021, the Magistrate Judge granted Defendant's motion for a continuance, and a new Trial Scheduling Order was executed, setting the Jury Trial for April 5, 2021. *See* ECF 16. On March 10, 2021, Defendant filed an opposed motion to continue the trial citing plea negotiations as the reason for the request. *See* ECF 23. As of the time of this filing, the Court has not ruled on Defendant's motion.

The Government's Notice of Intent to utilize expert SA Joshua Kipp was filed on January

UNITED STATES' TRIAL BRIEF -1

5, 2021.  *See* ECF 14.  In addition, the Government filed a Notice of Intent to Move to Admit Self-Authenticating Evidence Pursuant to Fed. R. Evid. 902(14).  *See* ECF 18.  Lastly, on March 4, 2021, the Government filed their Notice of Intent to Read Electronic Communications Aloud.  *See* ECF 19.

Moreover, on March 8, 2021, the Defendant filed a Motion *in Limine* to prohibit the government, its agents, and its witnesses from introducing evidence referring to Mr. Brown as the Defendant or referring to the undercover agent/his child persona as a victim and from referring to Defendant's prior bad acts or propensity evidence.  *See* ECF 20.  That same day the Defendant filed a Motion for a Daubert Hearing regarding the government's notice of intent to offer SA Kipp as an expert in the field of undercover operations.  *See* ECF 21.  The Government filed its responses to Defendant's *Daubert* and Motion *in Limine* on March 12, 2021.  *See* ECF 25 and ECF 26.

## IV.  FACTS THE GOVERNMENT INTENDS TO PROVE AT TRIAL

On November 17, 2020, at approximately 8:51pm, the Defendant initiated communications with an undercover agent, SA Josh Kipp, via the online dating application called "Grindr."  SA Kipp, posing as "Shzayne" on Grindr, advertised that he was an 18-year-old boy looking for a date, to chat, or be friends.  After a brief conversation with "Shzayne" on Grindr, the Defendant asked "Shzayne" if he had the messaging application "Whatsapp" and sent "Shzayne" a local Guam phone number to contact him on.  Approximately twenty minutes later, SA Kipp using screen name "Shayne" contacted Defendant on Whatsapp with the number Defendant had provided.  Subsequently, the Whatsapp text conversation between "Shayne" and Defendant continued until November 20, 2020.

Shortly after "Shayne" made contact with Defendant on Whatsapp, the Defendant asked "Shayne" how old he was to which the undercover responded he was 13 years old.  After

UNITED STATES' TRIAL BRIEF -2

"Shayne" told Defendant he had made a fake Grindr account, he then asked Defendant if he was too young. Defendant said he was not too young and began to send "Shayne" sexually explicit messages while repeatedly asking "Shayne" to send a picture of his penis or butt. Later that evening, the Defendant asked "Shayne" if he was really 13, and when "Shayne" responded that he was, Defendant asked for a picture of "Shayne's" face. At about 10:05pm, "Shayne" sent Defendant a picture of an image meant to depict a 13-year-old male, and Defendant replied that "Shayne" was handsome, and that "Shayne" didn't look 13 but more like 15 years old. Towards the end of the conversation that evening, Defendant asked "Shayne" if he wanted to be close or best friends and mentioned meeting "Shayne" on Friday to engage in sexual activity with him.

On November 18, 2020, Defendant continued to send sexually explicit messages to "Shayne" on Whatsapp. Defendant told "Shayne" he wanted to try him out, and when "Shayne" asked him to explain, Defendant responded, "Meaning I wanna try and put my dick in your butt." Shortly thereafter, Defendant sent "Shayne" a picture of his exposed penis. Defendant asked "Shayne" again to send a picture of his penis, saying "trust me I wont show it to anyone and nobody goes on my phone. I'm the only one can go on my phone." Defendant then sent "Shayne" two more pictures of exposed penises, claiming they were his friends' penises. Defendant again asked "Shayne" if he wanted to hang out with him, and if "Shayne" was willing to do it, telling "Shayne" he would go slow.

As the conversation turned to making arrangements to meet, Defendant explained to "Shayne" that he did not have access to enter Anderson Air Force Base, so "Shayne" offered to walk to Anderson Air Force Base's main gate at the visitor parking lot to meet Defendant on Friday, November 20, 2020. After sending several more sexually explicit texts to "Shayne", Defendant texted, "I hope you gonna like having a dick in your butt." Later that same evening, Defendant texted "Even your 13 I do wanna try you […]. That's if you don't report me."

UNITED STATES' TRIAL BRIEF -3

Defendant then said, "K so you willing to have sex with me", and when "Shayne" responded yes, Defendant told him he would like it on the first try.

The next day, November 19, 2020, Defendant once again struck up conversation with "Shayne", and started calling "Shayne" by the nickname "baby boy", telling "Shayne" he wanted to have a boyfriend. Later that day, "Shayne" asked Defendant if he could bring him some baby bottle pop candies when they met, and Defendant agreed. Defendant later told "Shayne" that he drove a gray Subaru Crosstrek. That evening, Defendant once again asked "Shayne" if he wanted to have sex and told him he would let him touch his penis as well.

In the late morning hours on November 20, 2020, Defendant sent "Shayne" a picture of the candy "Shayne" had asked Defendant to bring when they met. During the several days of conversation with Defendant, "Shayne" told Defendant that he had homework and chores, and that he could not meet Defendant until after his parents had left his house for the evening. That same day, Defendant continued to send sexually explicit messages to "Shayne" asking "Shayne" if he wanted Defendant to play with him and if "Shayne" would play with his penis. At about 8:00pm, Defendant told "Shayne" he was driving to the visitor's parking lot at Andersen Air Force Base and confirmed with "Shayne" that they would meet at the main gate. About thirty minutes later, Defendant texted "Shayne" informing him that he was parked in the visitor lot and seated inside a gray Subaru. Defendant then texted "Shayne" that he was excited, and his last message to "Shayne" read, "My dick is already getting hard."

Shortly after sending this text, Defendant was approached by federal agents in the Andersen Air Force Base visitor parking lot. When agents initially tried to detain Defendant, he refused to exit the vehicle. It was not until agents broke the car's window that Defendant unlocked the door and exited the car. After advising Defendant of his Miranda rights, Defendant waived his rights and agreed to speak with federal authorities. Defendant initially denied

knowing "Shayne" was 13 or that he was chatting with "Shayne" for the purpose of having sex with him. Eventually Defendant admitted that he intended to meet with "Shayne" so he could engage in sexual activity with "Shayne", who he believed to be a thirteen-year-old boy. He further admitted the phone seized from his car was the phone he had used to communicate with "Shayne" on Whatsapp, and that he sent "Shayne" a picture of his exposed penis and two other pictures of exposed penises he got off the internet. Defendant gave agents consent to search his car, and inside they found one unused condom, a bottle of lubricant, and the candy "Shayne" had asked Defendant to bring with him. Defendant would not give agents consent to search his cell phone and a search warrant was obtained. Moreover, an administrative subpoena sent to IT&E confirmed Defendant was the owner of the cell phone number that had been used to communicate with "Shayne."

## V. CHARGES AND RELATED ISSUES

Defendant is charged with two counts, Count One Attempted Enticement of a Minor, in violation of 18 U.S.C. Section 2422(b) and 2, and Count Two Attempted Transfer of Obscenity to a Minor, in violation of 18 U.S.C. Section 1470 and 2. The Indictment contains a Notice of Forfeiture. *See* ECF 10.

### A. Attempted Enticement of a Minor

Attempted Enticement of a Minor is a violation of Title 18, United States Code, Sections, 2422(b) and 2. The elements of the offense are as follows:

> First: That the Defendant knowingly attempted to persuade, induce, and entice, an individual under the age of 18 to engage in unlawful sexual activity; and[1]

> Second: That the Defendant used a means or facility of interstate commerce to do so; and

[1] Pursuant to 9 G.C.A. § 25.15(a)(1), "A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with the victim and […] the victim is under fourteen (14) years of age." The Guam code defines "Sexual Penetration" as "sexual intercourse, cunnilingus, fellatio, anal intercourse or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." 9 G.C.A. § 25.10(a)(9).

UNITED STATES' TRIAL BRIEF -5

<u>Third</u>:  That the Defendant knew the individual was under the age of 18; and

<u>Fourth</u>:  That the Defendant did something that was a substantial step toward committing the crime and that strongly corroborated the Defendant's intent to commit the crime.

Source:  Sixth Circuit Pattern Criminal Jury Instruction 16.09 (2017 ed.).

## B.  <u>Attempted Transfer of Obscenity to a Minor</u>

Attempted Transfer of Obscenity to a Minor is a violation of Title 18, United States

Code, Sections 1470 and 2.  The elements of the offense are:

<u>First</u>:  The Defendant knowingly attempted to transfer approximately three photographs which depicted an adult male exposing his penis; and

<u>Second</u>:  The Defendant knowingly attempted to transfer approximately three photographs which depicted an adult male exposing his penis to an individual less than sixteen years old; and

<u>Third</u>:  The Defendant knew that the other individual was less than sixteen-years old; and

<u>Fourth</u>:  The Defendant knew at the time of the attempted transfer the content, character, and nature of the material; and

<u>Fifth</u>:  The approximately three photographs which depicted an adult male exposing his penis are obscene; and

<u>Sixth</u>:  The Defendant knowingly used any means or facility of interstate commerce to attempt to transfer the approximately three photographs which depicted an adult male exposing his penis; and

<u>Seventh</u>:  The Defendant did something that was a substantial step toward committing the crime and that strongly corroborated the Defendant's intent to commit the crime

Source:  Fed. Crim. Jury Instr. 7th Cir. 1470[1](2012 ed.).

Material is obscene when it meets all three of the following requirements:

1. The average person, applying contemporary adult community standards, would find

that the material, taken as a whole, appeals to the prurient interest.  Material appeals to the

"prurient interest" when it is directed to an unhealthy or abnormally lustful or erotic interest, or

to a lascivious or degrading interest, or to a shameful or morbid interest, in

UNITED STATES' TRIAL BRIEF -6

[sex][or][nudity][or][excretion].

2. The average person, applying contemporary adult community standards, would find that the material depicts or describes sexual conduct in a patently offensive way.

3. A reasonable person would find that the material, taken as a whole, lacks serious literary, artistic, political, or scientific value.

Before you can find material to be obscene, you must find that it meets all three of these requirements. You are to apply these requirements from the standpoint of an average adult in the community, namely, the District in which you reside.

You are not to apply these standards from the standpoint of the sender, the recipient, or the intended recipient of the material.

You must also avoid applying subjective personal and privately held views regarding what is obscene. Rather, the standard is that of an average adult applying the collective view of the community as a whole.

The three-part test for determining whether material is obscene is taken from *Miller v. California*, 413 U.S. 15, 24 (1973) and *Pope v. Illinois*, 481 U.S. 497, 500-01 (1987). *See also*, *Smith v. United States*, 431 U.S. 291, 302 (1977) ("community standards…provide the measure against which the jury decides the questions of appeal to prurient interest and patent offensiveness"). The definition of "prurient interest" comes from a number of decisions, including *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 504-07 (1985); *Roth v. United States*, 354 U.S. 476, 487 n. 20 (1957); *Mishkin v. New York*, 383 U.S. 502, 508-09 (1966).

The definition of the relevant "community" is taken from *Hamling v. United States*, 418 U.S. 87, 104-05 (1974) ("A juror is entitled to draw on his own knowledge of the views of the average person in the community or vicinage from which he comes for making the required determination…"). *Accord Smith*, 431 U.S. at 302.

UNITED STATES' TRIAL BRIEF -7

The admonition to apply the standard of an average person and not particular persons (e.g. the sender and recipient, or the juror himself or herself) comes from several Supreme Court decisions. *See*, *e.g.*, *Miller*, 413 U.S. at 33 ("the primary concern in requiring a jury to apply the standard of the average person, applying contemporary community standards is to be certain that, so far as material is not aimed at a deviant group, it will be judged by its impact on an average person, rather than a particularly susceptible or sensitive person – or indeed a totally insensitive one") (internal quotation marks omitted). *See also*, *Pinkus v. United States*, 436 U.S. 293, 300-01 (1978) ("Cautionary instructions to avoid substantive personal and private views in determining community standards can do no more than tell the individual juror that in evaluating the hypothetical 'average' person he is to determine the collective view of the community, as best as it can be done."); *Accord Hamling*, 418 U.S. at 107 (material is not to be judged "on the basis of each juror's personal opinion").

## C. <u>Forfeiture</u>

The Indictment contains a Notice of Forfeiture pursuant to Title 18, United States Code, Sections 1467 and 2428, giving the Defendant notice of the Government's intent to seek forfeiture of various properties used or intended to be used to commit, to facilitate, or to promote the commission of such offense; and constituting , derived from, or traceable to the gross proceeds obtained directly or indirectly as a result of the offense. Entry of an order of forfeiture in a criminal case is considered part of sentencing. *Libretti v. United States*, 516 U.S. 29, 39 (1995). Nevertheless, the factual determination as to whether any property was involved or derived from an offense is a matter submitted to the jury. *United States v. Pelullo*, 14 F.3d 881, 904 (3rd Cir. 1994).[2]

---

[2] Fed. R. Crim. P 32.2(b), which became effective December, 2000, provides that this factual determination shall be made by the court unless a party requests that the jury determine whether the government has established the requisite nexus between the property and the offense. In an abundance of caution, in light of the Supreme Court's decision in *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000), the Government requests that the Court submit the
UNITED STATES' TRIAL BRIEF -8

1    The only issue for the jury is whether the Government "has established the requisite

2    nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(4). The jury itself does

3    not order forfeiture; nor does it consider third-party claims. Fed. R. Crim. P. 32.2(b), (c). In this

4    regard, the Government will submit proposed jury instructions and a special verdict form. The

5    jury's special verdict will serve as the basis for this Court to enter a preliminary order of

6    forfeiture. Fed. R. Crim. P. 32.2(b)(2), (3). The final order of forfeiture will follow notice and

7    advertisement of the preliminary order and will address any third-party claims. Fed. R. Crim. P.

8    32.2(b)(2), (c).

9    The jury does not consider whether the Defendant has an interest in the property to be

10   forfeited; nor does the jury determine the extent of the Defendant's interest in any property to be

11   forfeited. These matters are considered by the Court in ancillary proceedings, following the

12   jury's special verdict and entry of the preliminary order of forfeiture. Fed. R. Crim. P. 32.2(b),

13   (c); Advisory Committee Note to Subsection (b). As a sentencing issue, the burden of proof is

14   by a preponderance of the evidence. *See United States v. Dare*, 425 F.3d 634, 642 (9th Cir.

15   2005) ("[T]he preponderance of the evidence standard is the appropriate standard for factual

16   findings used for sentencing."); *United States v. Myers*, 21 F.3d 826 (8th Cir. 1994)

17   (preponderance standard applies because forfeiture is part of sentence in money laundering

18   cases; *United States v. Voigt*, 89 F.3d 1050 (3rd Cir. 1996) (following *Myers*); *United States v.*

19   *Smith*, 966 F.2d 1045, 1050-53 (6th Cir. 1992) (same for drug cases). Accordingly, the

20   Government requests that the Court instruct the jury on preponderance of the evidence standard

21   if and when the issue of forfeiture is submitted to them for decision. The Government will

22   submit pertinent instructions on this issue prior to the forfeiture stage of this proceeding.

23   _____

24   forfeiture issue to the jury unless the Defendant waives any right that he might have to a jury trial on forfeiture. The Government does not concede that *Apprendi* should be read to require a jury determination on criminal forfeiture and, indeed, would argue that *Libretti* has held to the contrary. The Government nevertheless suggests that, absent Defendant agreement, forfeiture be submitted to the jury until this issue is resolved in this Circuit.

UNITED STATES' TRIAL BRIEF -9

## VI. ANTICIPATED EVIDENCE

What follows is a brief summary of the testimony of the witnesses the Government intends to call at trial. This list is not exhaustive.

### A. Special Agent Joshua Kipp

Joshua Kipp is a Special Agent with the Federal Bureau of Investigations (FBI). SA Kipp was certified to conduct online undercover investigations by the Internet Crimes Against Children Investigations and the Internet Crimes Against Children Undercover Chat Course. SA Kipp conducted an online undercover investigation beginning on "Grindr" where Defendant initiated contact with SA Kipp before asking to move the conversation to "Whatsapp." SA Kipp will provide explanations about the applications "Grindr" and "Whatsapp", his role in the investigation, and the results of that investigation. SA Kipp will also testify as to his observations of the text message conversations between Defendant and "Shayne." SA Kipp will further testify as to his participation in the custodial interview with Defendant on November 20, 2020. SA Kipp will testify as to the statements Defendant made during an audio recorded interview and identify Defendant at trial.

In addition, SA Kipp performed the extraction of data from Defendant's cell phone, serial number R9TN200NLRJ, and located specific files. The Government notes that pursuant to Federal Rules of Evidence 902(14), data copied from an electronic device, storage medium, or file that is certified is self-authenticating and requires no extrinsic evidence of authenticity to be admitted. SA Kipp will present an affidavit or declaration prior to the admission of the contents of Defendant's device.

The extraction which was conducted will reveal (among other things), the file names SA Kipp recovered, the contents of Defendant's files, images in unallocated space, cache, relevant searches conducted by the Defendant, and any recovered images.

SA Kipp will, via affidavit or declaration, provide certification pertaining to the computer equipment he used to recover information utilized by the Defendant to receive, copy, and transfer messages to "Shayne."  The extracted data travelled in interstate commerce.

**B.  Special Agent Rafael Fernandez**

Special Agent Fernandez with the FBI, will testify as to his role in the investigation, including his custodial interview with Defendant on November 20, 2020.  SA Fernandez will testify as to the statements Defendant made during that interview.  SA Fernandez will identify Defendant at trial.

**C.  Special Agent Michael Gadsden**

Special Agent Gadsden with the FBI will testify as to his role in the investigation.

**D.  Special Agent Liu Jiang**

Special Agent Jiang with the FBI will testify as to his role in the investigation.

**E.  Special Agent Carla Lease**

Special Agent Lease with the FBI will also testify as to her role in the investigation.

**F.  Special Agent Erwin Fejeran**

Special Agent Fejeran with Homeland Security Investigations (HSI) will testify as to his role in this investigation, including participating in the search of Defendant's car.

**G.  Special Agent RJ Fejeran**

Special Agent Fejeran with HSI will testify as to his role in the investigation.

**H.  Agent Andres Martinez-Munoz**

Agent Martinez-Munoz with Air Force Office of Special Investigations (AFOSI) will testify as to his role in the investigation.

**I.  Agent Dallas Drexler**

Agent Drexler with AFOSI will also testify as to his role in the investigation.

**J. Elsiana Cruz**

Ms. Cruz is an employee with cellular phone service company IT&E, located on Guam, and will testify concerning her role in providing federal agents subscriber information for the phone number determined to be used by Defendant when communicating with the undercover agent from November 17, 2020 to November 20, 2020.

**VII. EVIDENTIARY AND OTHER TRIAL ISSUES**

**A. Attempt**

The charges against Defendant are based on an attempt. The Ninth Circuit Jury Instruction 5.3 for Attempt states: First, the Defendant knowingly attempted to persuade, induce, and entice a minor (Count 1), the Defendant knowingly attempted to transfer obscene matters to a minor (Count 2); and lastly, the Defendant did something that was a substantial step toward committing the crime.

Mere preparation is not a substantial step toward committing the crime. To constitute a substantial step, a Defendant's act or actions must demonstrate that the crime will take place unless interrupted by independent circumstances. Ninth Circuit Pattern Jury Instruction 5.3 (2016).

**B. Intent**

The Government need not prove the Defendant intended to actually engage in sexual activity but only that the Defendant intended to persuade the minor to do so. *See, United States v. Hughes*, 632 F.3d 956, 961 (6th Cir. 2011) (citing *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000)).

**C. Interstate Commerce**

The Ninth Circuit has held that the internet is both a channel and an instrumentality of interstate commerce, *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007), and that the

UNITED STATES' TRIAL BRIEF -12

telephone is both a channel, *United States v. Holder*, 302 F.Supp. 296, 298 (D. Mont. 1969), aff'd and adopted, 427 F.2d 715 (9th Cir. 1970) (per curiam), and an instrumentality, *United States v. Nader*, 542 F.3d 713, 717 (9th Cir. 2008), of interstate commerce.

### D. <u>Statements</u>

The Government will offer Defendant's statements to law enforcement into evidence at trial. Fed. R. Evid. 801(d)(2)(A). Under Rule 801(d)(2)(A), a party-opponent's own statements are admissible against that party-opponent as non-hearsay. Although the Government may offer a statement into evidence against a defendant as an admission, the defendant cannot offer his prior statements on his own behalf for proof of the truth of the matter asserted since these self-serving statements are hearsay if not offered against a party-opponent. *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (defendant could not introduce non-self-inculpatory statements because they were inadmissible hearsay). Nor can defendants seek to introduce such hearsay statements through cross-examination of other witnesses. *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988).

### E. <u>Photographs</u>

The Government intends to offer photographs into evidence. Copies of photographs may be introduced. Under Rule 901 of the Federal Rules of Evidence, a witness familiar with a scene or object may provide a sufficient foundation for admission of a photograph by testifying that it fairly and accurately depicts the scene or the object at the relevant time. *See, United States v. Brannon*, 616 F.2d 413, 416-17 (9th Cir. 1980), *cert. denied sub nom. Cox v. United States*, 447 U.S. 908 (1980) ("The evidence that the photographs accurately depicted events in the bank during the robbery was undisputed. This evidence provided a sufficient foundation to admit the photographs."); *See also, People of the Territory of Guam v. Ojeda*, 758 F.2d 403 (9th Cir. 1985).

The photographs in this case include, but are not limited to, photographs of the Defendant's text messages with the undercover agent on Grindr and WhatsApp, the images located on Defendant's cellphone, photos inside and outside of the vehicle Defendant drove to meet "Shayne", and photos of the condom and candy recovered from inside Defendant's vehicle.

### F. **Duplicates**

A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original, or (2) the circumstances make it unfair to admit the duplicate instead of the original. *See* Fed. R. Evid. 1003. The party opposing admission on Rule 1003 grounds has the burden of producing evidence to trigger one of these exceptions. *See*, *e.g.*, *United States v. Stewart*, 420 F.3d 1007, 1021 n.13 (9th Cir. 2005); *see also United States v. Chang An-Lo*, 851 F.2d 547, 557 (2d Cir. 1988) (burden of challenging admissibility of duplicate rests with the party against whom it is offered); *United States v. Garmany*, 762 F.2d 929, 938 (11th Cir. 1985 (same); *United States v. Georgalis*, 631 F.2d 1199, 1205 (5th Cir. 1980).

### G. **Chain of Custody**

The Government's position is the chain of custody in this case is sufficient to introduce the seized items into evidence. The Ninth Circuit has held that the prosecution may establish chain of custody to lay a proper foundation for admission of physical evidence if it is able to prove that a reasonable juror could find that the evidence is in substantially the same condition as when seized and if there is a reasonable probability the evidence has not been changed in important aspects. Merely raising the possibility of tampering is not enough to render evidence inadmissible. Finally, a defect in the chain of custody goes to the weight, not admissibility, of the evidence introduced. *United States v. Solorio*, 669 F.3d 943 (9th Cir. 2012); *United States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir. 1991); *See generally* Fed. R. Evid. 901(a). "There is no rule requiring the prosecution to produce as witnesses all persons who were in a position to come into contact with

UNITED STATES' TRIAL BRIEF -14

the article sought to be introduced in evidence." *Gallego v. United States*, 276 F.2d 914, 917 (9th Cir. 1960).

Before evidence is admitted, "the prosecution must introduce sufficient proof so that a reasonable juror could find that the items [that the prosecution seeks to admit into evidence] are in 'substantially the same condition' as when they were seized." *Solorio*, 669 F.3d 943, quoting *Harrington*, 923 F.2d at 1374. The district court may admit the evidence if there is a "reasonable probability the article has not been changed in important respects." *Gallego v. United States*, 276 F.2d 914, 917 (9th Cir. 1960). "Before a physical object connected with the connection of a crime may properly be admitted in evidence there must be a showing that such object is in substantially the same condition as when the crime was committed. This determination is to be made by the trial judge. Factors to be considered in making this determination include the nature of the article, the circumstances surrounding the preservation and custody of it, and the likelihood of intermeddlers tampering with it. If upon the consideration of such factors the trial judge is satisfied that in reasonable probability the article has not been changed in important respects, he may permit its introduction in evidence." *Id.* at 917.

### H. **Expert Witness**

As previously mentioned, the Government intends to call SA Joshua Kipp with the FBI as an expert in undercover chat investigations.

Rule 702 of the Federal Rules of Evidence provides that expert opinion is admissible if the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; the testimony is based on sufficient facts or date; the testimony is the product of reliable principals and methods and the expert has reliably applied the relevant principals.

UNITED STATES' TRIAL BRIEF -15

An expert may testify in the form of an opinion or otherwise if his or her specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue. *Daubert v. Merrell Dow Pharm, Inc*. 509 U.S. 579 (1993). Further, admissibility of expert opinion turns on preliminary questions of law determined by the judge, including whether the testimony is relevant and reliable, and whether its probative value is substantially outweighed by risk of confusion of issues or undue consumption of time. *United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000).

## I.  Prima Facie Threshold for Authentication

When proffered evidence is challenged on grounds of authenticity or identity, the evidence should be admitted once the government makes a prima facie showing of authenticity. *See United States v. Black*, 767 F.2d 1334, 1342 (9th Cir. 1985) ("[Rule 901] requires only that the court admit evidence if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. The credibility or probative force of the evidence offered is, ultimately, an issue for the jury.") (quotation marks and citation omitted).

In order to prove authenticity, there must be some evidence sufficient to support a finding that the evidence is what the proponent claims it to be. Fed.R.Evid. 901.

Federal Rules of Evidence § 902 states as follows:

**Rule 902. Evidence That Is Self-Authenticating**
The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted:

(14) **Certified Data Copied from an Electronic Device, Storage Medium, or File.** Data copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification, as shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12). The proponent also must meet the notice requirements of Rule 902(11).

The reference to the "certification requirements of Rule 902(11) or (12)" is a process by which a proponent seeking to introduce electronic data into evidence must present a certification

in the form of written affidavit that would be sufficient to establish authenticity were that information provided by a witness at trial. This affidavit, provided by a "qualified person," is Joshua Kipp, a Special Agent with the FBI, who collected the evidence and can attest to the requisite process of digital identification utilized.

In applying Fed. R. Evid. § 902(14), the accompanying Judicial Conference Advisory Committee notes provide guidance and insight concerning the intent of the law and how it should be applied. The second paragraph of committee note to Fed. R. Evid. § 902(14) states, in its entirety, as follows:

> Today, data copied from electronic devices, storage media, and electronic files are ordinarily authenticated by "hash value." A hash value is a number that is often represented as a sequence of characters and is produced by an algorithm based upon the digital contents of a drive, medium, or file. If the hash values for the original and copy are different, then the copy is not identical to the original. If the hash values for the original and copy are the same, it is highly improbable that the original and copy are not identical. Thus, identical hash values for the original and copy reliably attest to the fact that they are exact duplicates. This amendment allows self-authentication by a certification of a qualified person that she checked the hash value of the proffered item and that it was identical to the original. The rule is flexible enough to allow certifications through processes other than comparison of hash value, including by other reliable means of identification provided by future technology.

The Advisory Committee notes further state that Rule § 902(14) is designed to streamline the admission of electronic evidence where its foundation is not at issue, while providing a notice procedure where "the parties can determine in advance of trial whether a real challenge to authenticity will be made, and can then plan accordingly." This rule provides that properly certified electronic data is now afforded a strong presumption of authenticity, an opponent may still lodge an objection, but the opponent now has the burden to overcome that presumption.

**J.** **Foundation for Still Photographs/Video Recordings**

Videotaped evidence is categorized as photographic evidence under Federal Rule of Evidence § 1001(2). "So long as the scenes or events depicted accurately represent what they alleged to portray, there is no requirement that the individual who actually took the pictures testify

UNITED STATES' TRIAL BRIEF -17

at trial to lay a proper foundation." *Rogers v. Ingersoll-Rand Co.*, 971 F. Supp. 4 (D.D.C. 1997) citing *Simms v. Dixon*, 291 A.2d 184, 186 (D.C. App. 1972). "The same principles that govern the foundation for admissibility of photographs apply to the admission of videotapes. *Phiropoulos v. Bi-State Development Agency*, 908 S.W.2d 712, 714 (Mo.App.E.D. 1995). The party offering a videotape in evidence must show that it is an accurate representation of what it purports to show and foundation may be established through the testimony of any witness who is familiar with the subject matter of the tape and competent to testify from personal observation." *State v. Powers*, 148 S.W. 3d 830, 832 (Mo.App.E.D. 1995); *See also*, *Sutherland v. Koster*, 2011 WL 2784108 (E.D. Mo. 2011).

"Under federal law, a foundational objection to the admission of a videotape is without merit where testimony indicates that the tapes are 'fair and accurate." *United States v. Roach*, 28 F.3d 729, 733 (8th Cir. 1994). Strict compliance with guidelines for admission of videotapes is not required where a videotape's 'substance and circumstances under which it was obtained were sufficient proof of its reliability.' *Id.* at 733 n. 4 (citing *United States v. Clark*, 986 F.2d 65, 68 (4th Cir. 1993)). …Additionally, videotapes are admissible to show how a crime was committed and to link a defendant to a crime. *See* e.g., *United States v. Standish*, 3 F.3d 1207, 1210 (8th Cir. 1993)." *Sutherland v. Koster*, 2011 WL 2784108 (E.D. Mo. 2011).

### K. Expert Witness Opinion

The United States proposes the following jury instruction be given to the petite jury:

You have heard testimony from persons who, because of education or experience, were permitted to state opinions and the reasons for their opinion. Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

Ninth Circuit Model Criminal Jury Instructions, Instruction 4.14.

Federal Rules of Evidence § 702 states:

UNITED STATES' TRIAL BRIEF -18

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Under Federal Rules of Evidence 703, an expert can base his/her opinion on facts or data "perceived by or made known to the expert at or before the hearing." Fed. R. Evid. 703.

"The trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. *Daubert*, 509 U.S. at 592-93. This gatekeeping role extends to all cases where the "testimony reflects scientific, technical, or other specialized knowledge." *Kumho Tire Co., Ltd v. Carmichael*, 526 U.S. at 141.

Under *Daubert*, the Court must make a two-step inquiry: "First of all, the proffered 'expert' must be qualified to express an expert opinion…Secondly, the proffered expert opinion must be reliable." *In re TMI Litig.*, 193 F.3d 613, 664 (3rd Cir. 1999). In determining the reliability of the expert testimony, the Supreme Court has provided several factors to offer guidance to the court's inquiry. These factors include: (1) whether a method consists of a testable hypotheses; (2) whether the method has been subjected to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to eb reliable; (7) the qualifications of the expert witness

testifying based on methodology; and (8) the non-judicial uses to which the method has been put. *In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 742 n.8 (3rd Cir. 1994).

### L.  Statements of Non-Testifying Agents

During trial, agents may testify about other agents' surveillance.  Such testimony is admissible under the present-sense-impression exception of Rule 803(1) of the Federal Rules of Evidence.  *See e.g.*, *United States v. Gil*, 58 F.3d 1414, 1422 (9th Cir. 1995) (testimony of agents who overheard observations of surveillance officers "easily satisfies the requirements" of Rule 803(1), as "[t]he surveillance officers were providing a description of the events at the same time they were witnessing them, so the testimony was admissible under the present sense impression exception[.]").  This case-law survives *Crawford*.  *See United States v. Solorio*, 669 F.3d 943, 952-54 (9th Cir. 2012).

### M. Witness Impeachment by Prior Bad Acts

Rule 608 of the Federal Rules of Evidence governs the impeachment of witnesses based on specific instances of their conduct.  It permits inquiry into specific instances of a witness's conduct for the purpose of attacking the witness's credibility only on cross examination of the witness or of another witness who has testified as to the principal witness's character for truthfulness, and only if the prior instance of conduct is "probative of truthfulness or untruthfulness."  Fed. R. Evid. 608(b).

Additionally, Rule 608 prohibits proof of specific instances of a witness's conduct by extrinsic evidence.  Fed. R. Evid. 608(b).  Thus, even when Rule 608(b) allows inquiry into a specific instance of conduct probative of truthfulness, such as making false statements, it does not permit inquiry into the consequences of that act, such as an arrest or other disciplinary action for conduct.  *See id.*, advisory committee note ("[T]he extrinsic evidence prohibition of Rule 608(b) bars any reference to the consequences that a witness might have suffered as a result of an

1  alleged bad act," listing suspension or other disciplinary action as an example); *see also*, *United*

2  *States v. Davis*, 183 F.3d 321, 357 n. 12 (3rd Cir. 1999) (stating that Rule 608 prohibits inquiry

3  into a witness's suspension from work based on a prior bad act).

4      Finally, inquiry into specific acts of a witness's conduct is subject to the Court's

5  discretion, and the court may prohibit such inquiry under Rule 403. *See*, *e.g.*, *United States v.*

6  *Geston*, 299 F.3d 1130, 1137 (9th Cir. 2002).

7      **N.  Unrelated Instance of Non-Criminal Conduct**

8      Evidence that Defendant obeys laws or otherwise comported himself well on other

9  occasions is inadmissible because it is not probative of whether he committed the crimes charged

10  in this case. *See*, *e.g.*, *United States v. Qaoud*, 777 F.2d 1105, 1111 (6th Cir. 1985) (affirming

11  exclusion of evidence that defendants did not take bribes on certain occasions was inadmissible

12  as irrelevant to whether they did take bribes on others); *United State v. Russell*, 703 F.2d 1243,

13  1249 (11th Cir. 1983) (affirming exclusion of evidence of specific, unrelated "good acts" as

14  irrelevant to guilt); *United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978) ("Evidence of

15  noncriminal conduct to negate the inference of criminal conduct is generally irrelevant.").

16  Evidence of a "lack of prior bad acts" amounts to inadmissible character evidence under Rule

17  405(a), which prohibits evidence of specific instances of conduct to prove character. *See*, *United*

18  *States v. Barry*, 814 F.2d 1400, 1403 (9th Cir. 1987); *See also*, *United States v. Hedgcorth*, 873

19  F.2d 1307, 1313 (9th Cir. 1989) (same).

20      **O.  Sexual Images**

21      The Government intends to publish the Defendant's sexual images to the jury at trial.

22  The pornographic images are essential evidence upon which the charge is based. The jury may

23  then determine if the Defendant knowingly attempted to persuade, induce, and entice a person

24

who the defendant believed to be under eighteen years of age. The jury may then determine if the images meet the legal definition of obscenity.

### P. Explanation of Investigation

An out-of-court statement is not hearsay when offered not for the truth, but to explain how an investigation unfolded. *See United States v. Tenerelli*, 614 F.3d 764, 772 (8th Cir. 2010); *United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004); *United States v. Barela*, 973 F.2d 852, 855 (10th Cir. 1992); *United States v. Martin*, 897 F.2d 1368, 1371-72 (6th Cir. 1990); *United States v. Lowe*, 767 F.2d 1052, 1063-64 (4th Cir. 1985).

### Q. Inextricably Intertwined Evidence

"Inextricably intertwined" evidence is admissible under a well-settled exception to Rule 404(b)'s general ban on uncharged misconduct evidence. *See, e.g., United States v. Beckman*, 298 F.3d 788, 793-94 (9th Cir. 2002) ("Evidence of 'other acts' is not subject to Rule 404(b) analysis if it is 'inextricably intertwined' with the charged offense. This exception applies when (1) particular acts of the defendant are part of a since criminal transaction, or when (2) 'other act' evidence is necessary to admit in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.") (citation omitted); *United States v. Collins*, 90 F.3d 1420, 1428 (9th Cir. 1996) ("In general, evidence of other crimes committed by the defendant [] is inadmissible. However, an exception to this general rule is that evidence of other criminal activity may be used for the purpose of providing the context in which the charged crime occurred.") (citation omitted).

### R. Stipulations

Where appropriate, the Government may enter into stipulations regarding the facts. "When parties have entered into stipulations as to material facts, those facts will be deemed to

have been conclusively established." *United States v. Houston*, 547 F.2d 104, 107 (9th Cir. 1976).

## VIII.    <u>CONCLUSION</u>

This has been an outline of the case, a summary list of the witnesses who may testify, and a discussion of possible issues at trial.  Since issues not covered here might come up at trial, the United States would respectfully seek leave to submit further briefs as necessary to assist the Court.

RESPECTFULLY SUBMITTED this 12th day of March, 2021.

SHAWN N. ANDERSON
United States Attorney
Districts of Guam and the NMI

By:    */s/ April Owen*
APRIL OWEN
Assistant U.S. Attorney