

SHAWN N. ANDERSON
United States Attorney
Districts of Guam and the NMI
APRIL R. OWEN
Assistant United States Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagåtña, Guam 96910
PHONE: (671) 472-7332
FAX: (671) 472-7215

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JASON SOLATARIO BROWN,<br><br>Defendant. | CRIMINAL CASE NO. 20-00028<br><br>**PLEA AGREEMENT** |

Plaintiff, United States of America, by and through Shawn N. Anderson, United States Attorney for the Districts of Guam and the NMI, and April R. Owen, Assistant United States Attorney for the Districts of Guam and the NMI, and Defendant, Jason Solatario Brown, and the Defendant's counsel, Briana Kottke, Assistant Federal Public Defender, agree to the following Plea Agreement:

1. <u>Guilty Plea and Maximum Statutory Penalties</u>:

The Defendant, Jason Solatario Brown, agrees to plead guilty to Count One of the Indictment filed on December 2, 2020, charging the Defendant with Attempted Enticement of a Minor, in violation of 18 U.S.C. § § 2422(b) and 2.

PLEA AGREEMENT - 1

The Defendant, Jason Solatario Brown, understands that Count One in the Indictment is a Class A felony. The Defendant, Jason Solatario Brown, also understands that a conviction for Attempted Enticement of a Minor in violation of 18 U.S.C. §§ 2422(b) and 2 carries a maximum penalty of not more than life imprisonment, a <u>mandatory minimum</u> term of imprisonment of not less than ten (10) years, and a $250,000 fine. Pursuant to 18 U.S.C. § 3583(k), the authorized term of supervised release for any offense under section 2422 is any term of years not less than 5, or life. In addition to these maximum penalties, any violation of a supervised release order could lead to an additional term of up to 5 years imprisonment, pursuant to 18 U.S.C. § 3583(e)(3). Additionally, upon conviction, unless the Sentencing Court finds the Defendant to be indigent, an additional mandatory special assessment of $5,000 will be imposed pursuant to the Justice for Victims Trafficking Act of 2015, 18 U.S.C. § 3014. Defendant agrees to pay the special assessment at or before sentencing.

The Defendant also agrees to the criminal forfeiture of certain property, as further described herein.

Defendant, Jason Solatario Brown, understands that under the Sex Offender Registration and Notification Act, a federal law, he must register and keep the registration current in each of the following jurisdictions: where Defendant resides; where Defendant is an employee; and where Defendant is a student. Defendant understands that the requirements for registration include providing his name, residence address, and the names and addresses of any places where he is or will be an employee or student, among other information. Defendant further understands that the requirement to keep the registration current includes informing at least one jurisdiction in which Defendant resides, is an employee, or is a student, not later than three business days after any change of Defendant's name, residence, employment or student status. Defendant understands that failure to comply with these obligations subjects him to prosecution for failure

to register under federal law, 18 U.S.C. Section 2250, which is punishable by a fine or imprisonment, or both.

2. <u>The Court's Role in Plea and Sentencing Procedure</u>:

The Court is not a party to this Plea Agreement. Sentencing is a matter that is solely within the discretion of the Court. The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement.

The Defendant acknowledges that no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter. The Defendant understands that the Court is required to consider the applicable sentencing guideline range, but may depart upward or downward under the appropriate circumstances.

The Defendant also understands that should the sentencing judge decide not to accept any of the parties' recommendations, that decision is not a basis for withdrawing from this Plea Agreement or a basis for withdrawing this plea of guilty.

The Defendant understands that the Court shall accept the Defendant's unconditional guilty plea as long as it meets the requirements of Fed. R. Crim. P. 11(b). The Court will therefore conduct a limited inquiry to determine whether the Defendant's plea is knowing, voluntary and intelligent, and has a sufficient factual basis.

3. <u>Waiver of Constitutional Rights</u>:

The Defendant, Jason Solatario Brown, understands that by entering this plea of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

1     (a)     The right to a jury trial, and to be represented at trial and every other stage of the proceedings;

    (b)     The right at trial to see, hear and question the witnesses;

    (c)     The right to remain silent at trial, with such right to silence not being used against Defendant in any way;

    (d)     The right to testify at trial, and present evidence;

    (e)     The right to compel witnesses to testify; and

    (f)     The right to plead not guilty and to persist in that plea.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney. The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

4.     Elements of the Offenses:

The United States and the Defendant agree that in order to convict the Defendant of Attempted Enticement of a Minor, in violation of 18 U.S.C. §§ 2422(b) and 2, the United States must prove each of the following elements beyond a reasonable doubt:

    (a)     First, between on or about November 17, 2020, and November 20, 2020, the Defendant, Jason Solatario Brown, attempted to use a means or facility of interstate or foreign commerce, that is a cellphone and the Internet, to knowingly persuade, induce, or entice, an individual less than eighteen (18) years of age to engage in any sexual activity for which someone can be charged with an offense, that is, First Degree Criminal Sexual Conduct in violation of 9 G.C.A. § 25:15; and

  (b) Second, the Defendant believed that the individual he attempted to persuade, induce or entice was under the age of eighteen (18); and

  (c) Third, the Defendant did something that was a substantial step toward committing the crime and that strongly corroborated the Defendant's intent to commit the crime; and

  (d) Fourth, the Defendant's act or actions unequivocally demonstrated that the crime would have taken place unless interrupted by independent circumstances.

5.  Factual Basis and Statement of Facts:

  The United States and the Defendant stipulate and agree the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Jason Solatario Brown's guilty plea.

  The Defendant was born in 1975, and is a citizen of the United States.

  Beginning on or about November 17, 2020, Federal Bureau of Investigation (FBI) Special Agent Joshua Kipp, as part of a joint Internet Crimes Against Children (ICAC) operation with the Air Force Office of Special investigations (AFOSI), established an undercover account on the Grindr Application, an online social media dating application. SA Kipp undertook an online persona on Grindr as "Shzayne", and advertised that he was an 18-year-old boy looking for a date, to chat, or be friends.

  On November 17, 2020, at approximately 8:51pm, the Defendant initiated communications with "Shzayne." After a brief conversation with "Shzayne" on Grindr, the Defendant asked "Shzayne" if he had the messaging application "Whatsapp" and sent "Shzayne" local Guam phone number, xxx-xxx-4707 to contact him on. Approximately twenty minutes later, SA Kipp using screen name "Shayne" contacted Defendant on Whatsapp with the number Defendant had provided. Following an administrative subpoena, IT&E confirmed Defendant

was the owner of xxx-xxx-4707, which Defendant had used to communicate with "Shayne" on Whatsapp until November 20, 2020.

Shortly after "Shayne" made contact with Defendant on Whatsapp, the Defendant asked "Shayne" how old he was to which the undercover responded he was 13 years old. After "Shayne" texted Defendant he had made a fake Grindr account, "Shayne" asked Defendant if he was too young. Defendant said he was not too young and began to send "Shayne" sexually explicit messages while repeatedly asking "Shayne" to send a picture of his penis or butt. Later that evening, the Defendant asked "Shayne" if he was really 13, and when "Shayne" responded that he was, Defendant asked for a picture of "Shayne's" face. At about 10:05pm, "Shayne" sent Defendant a picture of an image meant to depict a 13-year-old male, and Defendant replied that "Shayne" was handsome, and that "Shayne" didn't look 13 but more like 15 years old. As the conversation wrapped up that evening, Defendant asked "Shayne" if he wanted to be close or best friends and mentioned meeting "Shayne" on Friday to engage in sexual activity with him.

On November 18, 2020, Defendant initiated contact with "Shayne", and continued to send sexually explicit text messages to "Shayne" on Whatsapp. Defendant told "Shayne" he wanted to try him out, and when "Shayne" asked him to explain, Defendant responded, "Meaning I wanna try and put my dick in your butt." Defendant then sent "Shayne" a picture of his exposed penis. Defendant asked "Shayne" again to send a picture of his penis, saying "trust me I wont show it to anyone and nobody goes on my phone. I'm the only one can go on my phone." Defendant then sent "Shayne" two more pictures of exposed penises, claiming they were his friends' penises. Defendant again asked "Shayne" if he wanted to hang out with him, and if "Shayne" was willing to do it, telling "Shayne" he would go slow.

As the text conversation turned to discussing meeting arrangements, Defendant explained to "Shayne" that he did not have access to enter Anderson Air Force Base, so "Shayne" offered

to walk to Anderson Air Force Base's main gate at the visitor parking lot to meet Defendant on Friday, November 20, 2020. After sending several more sexually explicit texts to "Shayne", Defendant texted, "I hope you gonna like having a dick in your butt." Later that same evening, Defendant texted "Even your 13 I do wanna try you […]. That's if you don't report me." Defendant later said, "K so you willing to have sex with me", and when "Shayne" responded yes, Defendant told him he would like it on the first try.

The next day, November 19, 2020, Defendant once again struck up text conversation with "Shayne", and started calling "Shayne" by the nickname "baby boy", telling "Shayne" he wanted to have a boyfriend. Defendant asked "Shayne" if he played with his penis that morning, and told him he was going to like his penis. Later that day, "Shayne" asked Defendant if he could bring him some baby bottle pop candies when they met, and Defendant agreed. During the course of the text conversation, Defendant told "Shayne" that he drove a dark gray Subaru Crosstrek, and sent "Shayne" a picture that generally depicted the car he owned. Later on that evening, Defendant again asked "Shayne" if he "really wanna do it tomorrow[…]for me to put it in you", and told "Shayne" he would let him touch his penis "and if you are willing to touch yours." The conversation ended with Defendant telling "Shayne" he could not wait to meet "Shayne" the next day.

In the late morning hours on November 20, 2020, Defendant again initiated text conversation with "Shayne" sending "Shayne" a picture of the bottle pop candy "Shayne" had asked Defendant to bring when they met. During the several days of conversation with Defendant, "Shayne" repeatedly told Defendant he had homework and chores, his parents took his phone before bed every evening, and he could not meet Defendant until after his parents had left the house for the evening. That same day, Defendant continued to send sexually explicit messages to "Shayne" asking "Shayne" if he wanted Defendant to play with him and if "Shayne"

would play with his penis. At about 8:00pm, Defendant told "Shayne" he was driving to the visitor's parking lot at Andersen Air Force Base and confirmed with "Shayne" that they would meet at the main gate. About thirty minutes later, Defendant texted "Shayne" informing him that he was parked in the visitor lot and seated inside a gray Subaru. Defendant then texted "Shayne" that he was excited, and his last message to "Shayne" read, "My dick is already getting hard."

Shortly after sending this text, Defendant was approached by federal agents in the Andersen Air Force Base visitor parking lot. When agents initially tried to detain Defendant, he refused to exit the vehicle. It was not until agents broke the car's window that Defendant unlocked the door and exited the car. After advising Defendant of his Miranda rights, Defendant waived his rights and agreed to speak with federal authorities. Defendant initially denied knowing "Shayne" was 13 or that he was chatting with "Shayne" for the purpose of having sex with him. Eventually Defendant admitted he intended to meet with "Shayne" so he could engage in sexual activity with "Shayne", who he believed to be a thirteen-year-old boy. He further admitted the phone seized from his car was the phone he had used to communicate with "Shayne" on Whatsapp, and that he sent "Shayne" a picture of his exposed penis and two other pictures of exposed penises he got off the internet. Defendant gave agents consent to search his car, and inside they found one unused condom, a bottle of lubricant, and the candy "Shayne" had asked Defendant to bring with him. Defendant's cell phone was also seized following his arrest.

Consequently, between November 17, 2020, and November 20, 2020, the Defendant used a cellphone and the Internet, to attempt to knowingly persuade, induce, or entice, an individual he believed to be less than eighteen (18) years of age, to engage in sexual activity for which one can be charged with First Degree Criminal Sexual Conduct in violation of 9 G.C.A. § 25:15. Defendant intended to persuade, induce, or entice an individual under the age of fourteen (14) to engage in sexual penetration. The Defendant's actions as described above were substantial steps

PLEA AGREEMENT - 8

taken in committing the crime of Enticement of a Minor, and those actions strongly corroborated the Defendant's intent to commit this crime.

This statement of facts is made for the limited purpose of supporting the Defendant's guilty plea. It therefore does not contain all facts relating to the underlying criminal conduct. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

6. <u>Waiver of Inadmissibility of Statements</u>:

The Defendant agrees to waive the inadmissibility of statements made in the course of plea discussions with the United States, pursuant to Fed. R. Crim. P. 11(f). This waiver shall apply if the Defendant withdraws this guilty plea or breaches this Plea Agreement. The Defendant acknowledges that any statements made by the Defendant to law enforcement agents in the course of plea discussions in this case would be admissible against the Defendant in the United States's case-in-chief if the Defendant were to withdraw or breach this Plea Agreement.

7. <u>The United States Agrees</u>:

    (a.) <u>Dismissals</u>

At the time of sentencing, the United States agrees to move to dismiss Count Two of the Indictment which charges the Defendant with Attempted Transfer of Obscene Material to a Minor, in violation of 18 U.S.C. §§ 1470 and 2.

    (b.) <u>Not Prohibited From Filing of Additional Charges</u>:

By entering into this agreement the Defendant understands and agrees, the United States Attorney's Office for the Districts of Guam and the NMI is not prohibited from bringing additional charges against the Defendant based upon information in its

possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in this Indictment.

8. United States Sentencing Guideline Calculations:

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "U.S.S.G.") are applicable to this case and that the Court will determine the Defendant's applicable sentencing guideline range at the time of sentencing. In determining a sentence, the Court is obligated to consider that range, possible departures or variances under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a).

(a.) Base Offense Level and Adjustments:

The United States and the Defendant agree that the base offense level with Specific Offense Characteristics for 18 U.S.C. § § 2422(b) and 2 and Repeat and Dangerous Sex Offender Against Minors is 37. See U.S.S.G. §§ 2G1.3(a)(3) and (b)(3) and U.S.S.G. §§ 4B1.5 (a)(1)(A) and (B)(i).

(b.) Acceptance of Responsibility:

If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than ~~March 18,~~ March 23, 2021, the United States will move for a three (3) level downward adjustment in the offense level for the Defendant's timely acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a) and §3E1.1(b).

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, not recommend a three (3) level downward reduction for acceptance of responsibility if, prior to the imposition of sentence, the

PLEA AGREEMENT - 10

Defendant is charged or convicted of any criminal offense other than the criminal offense presently known to the parties, or if the Defendant tests positive for any controlled substance.

Furthermore, the Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the District of Guam, at or before sentencing, and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment, as a condition to this recommendation by the United States.

Therefore, the United States and the Defendant agree that the Defendant's final adjusted offense level would be 34.

(c.) Criminal History:

As of the date of this plea agreement, the Defendant has at least two previous criminal convictions including at least one sex offense conviction as described in 18 U.S.C. § 2426(b)(1)(B) that was perpetrated against a minor; and did not include trafficking in, receipt of, or possession of, child pornography. Based on this information, the Defendant's criminal history category would be Category V. See U.S.S.G. § 4B1.5 (a)(2).

9. Departures:

The Defendant and the United States understand and acknowledge that, at sentencing, they are free to make whatever sentencing recommendations for whatever reasons they deem are appropriate. That is, the United States and the Defendant are free to seek an upward or a downward departure from the applicable sentencing guideline range.

//
//
//

10. Incarceration:

    (a.) Length of Imprisonment:

The United States agrees to recommend at sentencing that the Court impose a sentence within the applicable guideline range for Base Offense Level 34 and Criminal History Category V.

11. Criminal Fine:

The United States and the Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

12. Supervised Release:

The United States and the Defendant agree to recommend that the Court impose at least a five year or life term, of supervised release to include the following special conditions, in addition to the standard conditions of supervised release: (1) that the Defendant participate and complete such drug testing and drug treatment programs as the Probation Officer directs; that the Defendant's person, residence, office, vehicle, and belongings are subject to search at the direction of the Probation Officer; and that the Defendant comply with all Sex Offender Registry requirements.

13. Mandatory Special Penalty Assessment:

The Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the District of Guam, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

14. Payments While Incarcerated:

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

15. Forfeiture:

The Defendant agrees to forfeit, pursuant to 18 U.S.C. § 2428, all interests in any asset related to attempted enticement of a minor that the Defendant currently owns, has previously owned or over which the Defendant currently, or has in the past, exercised control, directly or indirectly, and any property the Defendant has transferred, as well as any property that is traceable to, derived from, fungible with, or a substitute for property that constitutes the proceeds of his offense, including but not limited to the following specific property:

**PERSONAL PROPERTY:**

    a. Samsung Galaxy A20s Cellular Phone; SN: R9TN200NLRJ

Defendant agrees to forfeit any rights and interests he may have in the property, and agrees to hold the United States, its agents and employees harmless from any claims whatsoever in connection with the seizure or forfeiture of property covered by this agreement.

The Defendant stipulates and agrees that the conduct described in the Factual Basis contained herein provides a basis for forfeiture of the above listed property. Defendant further agrees to waive all interest he may have in any such property in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal. The Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Pursuant to the provisions of Fed. R. Crim. P. 32.2(b)(1)(1), the United States and the Defendant agree to request that promptly after accepting this plea agreement, the Court make a determination that the government has established that the remaining listed property constitutes property used in a transaction or attempted transaction to commit, or to facilitate the commission of, a violation of 18 U.S.C. § 2422(b), and enter an order of

forfeiture. Pursuant to Rule 32.2(b)(4), the Defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the Defendant at the time it is entered.

Defendant acknowledges that he understands that the forfeiture of property is part of the sentence that will be imposed in this case and waives any failure by the court to advise him of this pursuant to Rule 11(b)(1)(J), at the time his guilty plea is accepted.

The Defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excess fine or punishment. The Defendant further agrees to take all steps as requested by the United States to pass clear title to forfeitable properties to the United States, and to testify truthfully in any judicial forfeiture proceeding. The Defendant acknowledges that all property covered by this agreement is subject to forfeiture as property involved in the illegal conduct.

The Defendant understands that the United States reserves the right to seek additional forfeiture, including but not limited to additional sums of money or property used in a transaction or attempted transaction, to commit, or to facilitate the commission of or are proceeds traceable to a violation of the offense of conviction of 18 U.S.C. § 2422(b). Defendant understands that pursuant to Fed. R. Crim. P. 32.2(b)(2)(C) and Rule 32.2(e)(1), if the court cannot identify all of the specific properties subject to forfeiture, or calculate the amount of the money judgment, before sentencing, it may enter an order that describes the properties in general terms.

The Defendant agrees that the United States shall, at its option, be entitled to the forfeiture of any property (substitute assets) of the Defendant up to the value of the money judgment. The court shall retain jurisdiction to settle any disputes arising from application of this clause. The Defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of Defendant's sentence.

The Defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the Defendant's sentencing. The Defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets. The Defendant further agrees that Fed. R. Crim. P. 11 and U.S.S.G. § 1B1.8 will not protect from forfeiture assets disclosed by the Defendant as part of his cooperation.

The Defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the Defendant's sentencing. In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the Defendant's properties shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the Defendant in addition to forfeiture.

16. <u>Financial Disclosure Obligations</u>:

Defendant agrees to submit to the United States Attorney's Office for the Districts of Guam and the NMI, within three weeks of the execution of this plea agreement, a complete, accurate and truthful financial statement and accompanying releases, in a form it provides and as it directs. Defendant agrees to disclose all assets in which he has any interest or over which he exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. Defendant authorizes the United States Attorney's Office for the Districts of Guam and the NMI to obtain a credit report on him to evaluate his ability to satisfy any financial obligation imposed by the Court.

Defendant understands and agrees that any monetary penalties imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States,

PLEA AGREEMENT - 15



pursuant to 18 U.S.C. § 3613. Defendant understands that, by law, interest accrues on any remaining balance of the debt. Defendant agrees not to dissipate assets. If Defendant is financially unable to immediately pay any monetary penalties in full, Defendant agrees: (a) to cooperate with the United States Attorney's Office; (b) to provide updated financial statements upon request by the United States Attorney's Office and to keep the office advised about Defendant's current address; and (c) for his debt to be placed on the Treasury Offset Program and any tax refund/rebate offset program existing in his state of residency. Defendant understands that any funds captured by an offset program will be paid towards his monetary penalties, but does not relieve him of his obligation to pay the monetary penalties in full.

17. <u>Additional Violations of Law Can Void Plea Agreement</u>:

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense other than the criminal offense presently known to the parties, or if the Defendant tests positive for any controlled substance.

18. <u>Appeal Rights</u>:

Defendant understands that he has a limited right to appeal or challenge the conviction and sentence imposed by the Court. Defendant hereby expressly waives his right to appeal his conviction. Defendant further expressly waives his right to file any post-conviction motion attacking his conviction, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence.

19. Integration Clause:

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Districts of Guam and the NMI, and cannot bind other federal, state or local authorities. The United States and the Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and the Defendant.

## Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Districts of Guam and the NMI.

Shawn N. Anderson
United States Attorney

_____     3/17/21
APRIL R. OWEN                      Date
Assistant U.S. Attorney

//
//
//
//
//
//
//
//
//

PLEA AGREEMENT - 17

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____     3-17-2021
JASON SOLATARIO BROWN                Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept the Defendant's plea of guilty.

_____     3/17/21
BRIANA KOTTKE                        Date
Assistant Federal Public Defender
Attorney for the Defendant

PLEA AGREEMENT - 18